1

2

3

4                    UNITED STATES DISTRICT COURT

5                  EASTERN DISTRICT OF WASHINGTON

6

7   THOMAS L. MURTY,                    )

8              Plaintiff,               )        NO.  CV-04-186-AAM

9        v.                             )        ORDER GRANTING DEFENDANTS'
                                        )        MOTION FOR SUMMARY JUDGMENT,
10  ANN VENEMAN,  Secretary of          )        *INTER ALIA*
    Agriculture, U.S. Department of the )
11  Agriculture, Forest Service, Job Corps )
    Field Office-Curlew, Washington,    )
12                                      )
              Defendants.               )
13

14        **BEFORE THE COURT** is the defendants' Motion to Dismiss and/or for Summary

15  Judgment.  (Ct. Rec. 6).  Plaintiff is represented by Greg R. Tichy, attorney.  Defendants are

16  represented by William H. Beatty, Assistant United States Attorney.  The matter was set for hearing

17  without oral argument.  (Ct. Rec. 9).

18  **I.    BACKGROUND**

19        Plaintiff Thomas L. Murty alleges (1) sex discrimination in violation of Title VII of the

20  Civil Rights Act of 1964, as amended to include protection for federal employees (42 U.S.C. §

21  2000(e)-16); (2) age discrimination in violation of the Age Discrimination in Employment Act

22  (ADEA) of 1967, as amended and made applicable to federal executive agency employees over 40

23  years old, (29 U.S.C. §§ 621 et seq.); and (3) retaliation.  Defendants are Ann Veneman, Secretary

24  of Agriculture and the Department of the Agriculture, Forest Service (USDA), Job Corps Field

25  Office, Curlew, Washington (JCC).

26        Plaintiff, a temporary employee with USDA, contacted an Equal Employment Opportunity

27  (EEO) counselor on January 11, 2001, when the agency indicated it could not extend his temporary

28  position beyond the January 30, 2001 expiration date.  The specific instances of harassment and

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                          -1-

discrimination alleged by plaintiff in his initial Equal Employment Opportunity Commission (EEOC) claim are as follows:

1.  Plaintiff's temporary appointment as Vocational Instructor with the USDA was not extended beyond January 12, 2001;

2.  Lead Vocational Instructor at JCC, Darald Staley, made disparaging remarks about plaintiff's age on two occasions (September 9, 1999 and April 5, 2000) such as "old people should just stay home and draw Social Security;"

3.  Mr. Staley told plaintiff's students that he was not welcome as an instructor in September 1999;

4.  Mr. Staley failed to assist him with a class on September 22, 1999;

5.  Management failed to provide plaintiff with a substitute teacher to assist him on October 14, 1999;

6.  Management failed to provide plaintiff with assistance in teaching his class from April 29, 2000, to January 12, 2001;

7.  Plaintiff's temporary appointment was ended on June 30, 2000, shortening his appointment by two months and seven days; and

8.  Plaintiff's employment status was changed from that of a USDA employee to an Express Personnel employee on January 30, 2001.

On March 26, 2001, plaintiff began his second EEO proceeding after his supervisor, John Davis, told him on March 23, 2001, that the JCC no longer needed his services.  On July 12, 2001, plaintiff filed a second EEO claim against the USDA based on reprisal for his prior EEO claim. (Ct. Rec. 8, p. 3-4, 6).

Plaintiff is a member of protected groups by virtue of his sex (male); age (dob May 21, 1932) and prior involvement in protected EEO activity (the initial contact with EEO on January 11, 2001).  (Ct. Rec. 8, p. 3-4; Ct. Rec. 8-2, p. 8, 43-44).  The complaints were consolidated by the USDA Office of Civil Rights, an investigation was conducted and it was determined that plaintiff's claims were not meritorious.  (See Ct. Rec. 8, p. 22 (Decision of Administrative Judge)).  Plaintiff exhausted his administrative remedies and filed this action in district court pursuant to 42 U.S.C. §

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                              -2-

1  2000e-5(f)(3) on June 7, 2004.

2  **II.    DEFENDANTS' MOTION**

3  Defendants move for dismissal of the action due to plaintiff's failure to state a claim upon

4  which relief can be granted and lack of jurisdiction over the subject matter.  Specifically, defendants

5  assert that: (1) certain claims are time-barred; (2) plaintiff has not alleged facts establishing a prima

6  facie case of reprisal or discrimination; and (3) even if he could establish a prima facie case,

7  plaintiff fails to present any evidence of pretext.  In the alternative, defendants assert summary

8  judgment is appropriate because plaintiff did not meet his burden of production, and there are no

9  issues of material fact.  Defendants contend it is undisputed that plaintiff's position with the USDA

10 was temporary, that government regulations would not permit an extension, that plaintiff applied

11 with and was hired by Express Personnel, and that he was assigned to work at JCC as a temporary

12 instructor until he was dismissed.  (Ct. Rec. 6).

13 Defendants' "Statement of Material Facts," submitted with their motion for summary

14 judgment as required by LR 56.1(a), consists of portions of the Report of Investigation (ROI)

15 prepared by the USDA's Office of Civil Rights on or about July 17, 2002. (Ct. Rec. 8).  Included in

16 the ROI is plaintiff's affidavit dated January 8, 2002, as well as affidavits from James Davis (USDA

17 Vocational Training Administrator), James Cody (USDA Assistant Vocational Program Officer),

18 Barbara Bell (USDA Personnel Management Specialist); and Darald Stacey (USDA Lead

19 Vocational Instructor/JCC).  Plaintiff did not file a separate statement of facts in the form required

20 by LR 56.1(b) to controvert defendants' statement of facts.  Thus, the Court will assume that the

21 facts as claimed by the moving party are admitted to exist without controversy except as and to the

22 extent that such facts are controverted by the record. [1]  LR 56.1(d).  The facts are summarized as

23 follows:

24 Plaintiff was hired by the USDA as a temporary vocational instructor at the JCC on

25 September 7, 1999.  The temporary position was first filled on January 31,1999, with a male, who

26

27 [1] The Court also notes plaintiff's responsive memorandum was not filed within the time-
   frame required by LR 7.1(c).  The Court will excuse this lack of timeliness, but counsel should

28 comply with the local rules regarding any future motions.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                          -3-

1  was replaced by a female, Shelene Brown, on May 2, 1999.  Plaintiff had also applied for the

2  position, but due to the defendants' failure to properly credit his veterans preference, Ms. Brown

3  placed first among the applicants.  Plaintiff brought the error to the attention of a veterans affairs

4  counselor and the mistake was rectified. (Ct. Rec. 8-2, p. 47).  Ms. Brown was discharged and

5  plaintiff was hired. The temporary position was scheduled to expire on June 30, 2000.  The

6  temporary nature of the appointment was clearly noted on plaintiff's Notification of Personnel

7  Action. (Ct. Rec. 8-3, p. 53).  The position was extended to January 30, 2001, after which agency

8  regulations prohibited extension.[2] (See Ct. Rec. 8-2, p. 23).  Knowing plaintiff's temporary position

9  was going to expire, his supervisor, John Davis, recommended to plaintiff that he apply for a

10  position with Express Personnel Services (Express).  (Ct. Rec. 8-2, p. 54; Ct. Rec. 8-3, p. 5).

11  Express is a private contractor that supplies temporary workers as needed to the JCC.  After January

12  30, 2001, Express hired plaintiff and assigned him to work at JCC as an instructor.  He had a

13  reduction of pay in the amount of $2.49 per hour and lost sick and annual leave benefits.  (Ct. Rec.

14  8-2, p. 48).  He performed the same instructional duties at JCC as he did as a USDA employee.

15       On March 23, 2001, Mr. Davis called plaintiff into a meeting with other JCC management

16  personnel and informed him his services were no longer needed.  Plaintiff states the reason given

17  was because he had "said something about someone," but Mr. Davis would not reveal who or what

18  was said.  (Ct. Rec. 8-2, p. 55).  Earlier that day, Barbara Ball, USDA personnel specialist, had

19  informed Mr. Davis that the daughter of a recently deceased employee had called her to ask about

20  _____

21  [2] 5 C.F.R. 316.410(c) provides:

22  (1) An agency may make a temporary appointment for a specified period not to exceed 1
    year. The appointment may be extended up to a maximum of 1 additional year (24 months

23  of total service). Appointment to a successor position (i.e., to a position that replaces and
    absorbs the position to which an individual was originally appointed) is considered to be an

24  extension of the original appointment. Appointment to a position involving the same basic
    duties and in the same major subdivision of the agency and same local commuting area as

25  the original appointment is also considered to be an extension of the original appointment.

26

27  (2) An agency may not fill a position by temporary appointment if that position has
    previously been filled by temporary appointment(s) for an aggregate of 2 years, or 24

28  months, within the preceding 3-year period.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                           -4-

1   the circumstances surrounding her father's death. (Ct. Rec. 8-3, p. 44).  The daughter reported that

2   plaintiff had called her several times to tell her that Mr. Davis and the agency were responsible for

3   her father's death. Ms. Ball and Mr. Davis were extremely upset about plaintiff's comments to the

4   deceased employee's daughter.  Mr. Davis stated in his affidavit that plaintiff's services were no

5   longer needed due to a seasonal decline in student census. The agency was also in the process of

6   entering into a contract with the union to provide instructors.  He said plaintiff's unwarranted

7   comments to the daughter caused him to expedite the discharge.  (Ct. Rec. 8-3, p. 7).  It appears

8   plaintiff continued to work for Express after his assignment to JCC was over.  (Ct. Rec. 8-2, p. 55).

9        Darald Staley, the permanent vocational instructor at JCC, took over the classes after

10  plaintiff's departure.  John Cody, second level supervisor, states that at the time of plaintiff's

11  dismissal,  the student population had dropped from 30-32 students to16; Mr. Staley estimated the

12  decrease to be 20-22 students.  (Ct. Rec. 8-3, p. 20, 32).   In early summer of 2001, Mr. Staley was

13  required to work off-site at fire camp training.   Express employee James Moore took over the

14  classes in Mr. Staley's absence.  The class size was increasing and, by September 2001,

15  instructional services were provided by the union.  (Ct. Rec. 8-3, p. 21, 33).

16      Plaintiff states in his ROI affidavit that on September 9, 1999, Mr. Staley asked him why a

17  person of his age would want a job like the one he had and stated that "old people should stay home

18  and draw Social Security."   Plaintiff states that in April 2000, Mr. Staley again commented that

19  "old people should be able to live on social security and [plaintiff] should be able to do so." (Ct.

20  Rec. 8-2, p. 48-49).  Plaintiff states Mr. Staley was the only person who made disparaging remarks

21  about his age.  (Ct. Rec. 8-2, p. 49).  Plaintiff also alleges that in September 1999, and sometime in

22  2000, students told him that Mr. Staley did not want him as an instructor.  He states he did not get

23  support in teaching from Mr. Staley, and JCC management did not provide a substitute when Mr.

24  Staley was absent, requiring plaintiff to supervise two classes.  Plaintiff says he had trouble with

25  some of the students, but Mr. Staley did not support his handling of the students and told plaintiff to

26  stop writing-up the students.  Plaintiff complained about this interference to supervisor John Cody,

27  after which there was no further interference with plaintiff's behavioral write-ups. (Ct. Rec. 8-2, p.

28  50).

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                    -5-

1    In his affidavit, Mr. Staley denies making any disparaging remarks to plaintiff. (Ct. Rec. 8-

2    3, p. 26). He reports plaintiff had problems with the female students, several of whom complained

3    to Mr. Staley and management that plaintiff was rude and discriminatory towards them. (Ct. Rec.

4    8-3, p. 29). Mr. Cody states he met with the female students, a counselor, and Mr. Staley to discuss

5    the problems. (Ct. Rec. 8-3, p. 22). Mr. Cody indicates the female students reported that plaintiff

6    told them they had no business in construction and "didn't want them in the trade." (Ct. Rec. 8-3,

7    p. 22, 29). Mr. Cody discussed the situation with plaintiff and reassigned some of the female

8    students to Mr. Staley. (Ct. Rec. 8-3, p. 29). Mr. Staley also states that the reason there were two

9    instructors at JCC was so they could cover for another. He states substitutes were not brought in to

10   cover unless both instructors were gone, and he taught both crews when plaintiff was out. (Id.).

11   This practice was confirmed by supervisors Mr. Davis and Mr. Cody. (Ct. Rec. 8-3, p. 3, 16). Mr.

12   Davis states that he does not recall plaintiff complaining to him about needing a substitute. (Ct.

13   Rec. 8-3, p. 3).

14        In his response to defendants' motion for summary judgment, plaintiff asserts there are

15   disputed facts and summary judgment should be denied.

16   **III.    DISCUSSION**

17        **A.    Legal Standard**

18             1.    Rule 12(b)(6) Dismissal

19        A dismissal based on Fed. Civ. Rule P.12(b)(6) (failure to state a claim on which relief can

20   be granted) is proper only where there is either a "lack of a cognizable legal theory" or "the absence

21   of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901

22   F.2d 696, 699 (9th Cir. 1988). In reviewing a 12(b)(6) motion, the court must accept as true all

23   material allegations in the complaint (or counterclaim as the case may be), as well as reasonable

24   inferences to be drawn from such allegations. Mendocino Environmental Center v. Mendocino

25   County, 14 F.3d 457, 460 (9th Cir. 1994); NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.

26   1986). The complaint must be construed in the light most favorable to the plaintiff. Parks School

27   of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). The sole issue raised by a

28   12(b)(6) motion is whether the facts pleaded, if established, would support a claim for relief;

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                        -6-

1   therefore, no matter how improbable those facts alleged are, they must be accepted as true for

2   purposes of the motion.  Neitzke v. Williams, 490 U.S. 319, 326-27, 109 S.Ct. 1827 (1989).  "A

3   complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that

4   the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

5   Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99 (1957).  In order to survive a motion to dismiss, an

6   employment discrimination complaint must contain only a "short and plain statement of the claim

7   showing the pleader is entitled to relief." Fed. R. Civ. P. 8 (a)(2).  It does not need to contain

8   specific facts establishing a prima facie case.  Swierkiewicz v. Sorema, N.A., 534 U.S. 506,

9   508,122 S.Ct. 992 (2002).

10       2.    Summary Judgment

11       Summary judgment allows the parties to avoid unnecessary trials when there is no dispute as

12  to the facts before the court.  Zweig v. Hearst Corp., 521 F.2d 1129 (9th Cir. 1975), cert. denied, 423

13  U.S. 1025, 96 S.Ct. 469 (1975).  Summary judgment shall be granted where "there is no genuine

14  issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."

15  Fed. R. Civ. P. 56(c); British Airways Bd. v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978).  Under

16  Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence

17  produced by the parties permits only one conclusion.  Anderson v. Liberty Lobby, Inc., 477 U.S.

18  242, 247, 106 S.Ct, 2505 (1986); Semegen v. Weidner, 780 F.2d 727, 732 (9th Cir. 1985).  The

19  moving party bears the initial burden of informing the court of the basis of its motion and

20  identifying evidence of record it believes demonstrates the absence of "a genuine issue of material

21  fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986).  Rule 56 does not

22  require the moving party to support its motion with affidavits or other documents negating the

23  opponent's claim." Id.  If the moving party satisfies its initial burden, Rule 56(e) requires the party

24  opposing the motion to respond by submitting evidentiary materials that designate "specific facts

25  showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio

26  Corp., 475 U.S. 574, 587 n.11, 106 S. Ct.1348 (1986).

27       An opponent cannot rest on denials or mere allegations unsupported by factual data or in a

28  pleading.  Id.; Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Further, only disputes over facts

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                    -7-

1  that might affect the outcome of the case under the applicable law will preclude entry of summary

2  judgment.  Factual disputes that are irrelevant will not be counted.  Anderson, 477 U.S. at 250.  In

3  determining if summary judgment is appropriate, a court must look at the record and any inferences

4  to be drawn from it in the light most favorable to the party opposing the motion.  Id., at 255.

5  Summary judgment is to be granted only where the evidence is such that no reasonable jury could

6  return a verdict for the non-moving party.  Id. at 250.  Conversely, any doubt about the existence of

7  any issue of material fact requires denial of the motion.  Id. at 255.

8          On summary judgment, the shifting burdens of production and persuasion in Title VII and

9  ADEA claims are the same, and the degree of proof necessary to establish a prima facie case is

10  minimal.  Wallis v. J. R. Simplot, Co., 26 F.3d 885, 888-89 (9th Cir. 1994) (citing Rose v. Wells

11  Fargo & Co., 902 F.2d 1417, 1420 (9th Cir. 1990). [3]  The prima facie case may be based on direct

12  evidence of discriminatory intent or circumstantial evidence that raises a presumption of unlawful

13  discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973);

14  Lowe v. City of Monrovia, 775 F.2d 998, 1007 (9th Cir. 1985).  The mere existence of a prima facie

15  case, however, does not preclude summary judgment.  Once the employer has offered a legitimate,

16  non-discriminatory reason for its actions, the presumption of unlawful discrimination "simply drops

17  out of the picture."  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510-11, 113 S.Ct. 2742

18  (1993).  The employee must then produce "specific, substantial evidence of pretext," and "must

19  tender a genuine issue of material fact as to pretext in order to avoid summary judgment."  Steckl v.

20  Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983).

21          **B.    Timeliness**

22          An employee who believes he is the object of discrete acts of discrimination based on sex,

23  race, color, religion, national origin, handicap or age must initiate contact with an EEOC counselor

24  no later than 45 days after the alleged discriminatory or retaliatory act.  29 C.F.R. § 1614.105.

25  Before a federal employee can bring a discrimination/ retaliation suit in federal court, the employee

26

27          [3]  The Supreme Court indicated in Swierkiewicz, however, that the prima facie
    requirements were not applicable to the pleading standard a petitioner must satisfy to survive a Rule
28  12 (b)(6) motion to dismiss.  Swierkiewicz, 534 U.S. at 511-12.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                          -8-

1    must first exhaust applicable administrative remedies.  See National R.R. Passenger Corp. v.

2    Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002).  The failure to do so is "fatal to a federal employee's

3    discrimination claim." Cherosky v. Henderson, 330 F.3d 1243, 1245 (9th Cir. 2003) (quoting,

4    Lyons v. England, 307 F. 3d 1092, 1103 (9th Cir. 2002)).  Defendants ask that all claims based on

5    actions prior to November 27, 2000, be dismissed as time-barred due to plaintiff's failure to comply

6    with the EEOC time requirements. (Ct. Rec. 7, p. 18).

7        Plaintiff first contacted the EEOC counselor on January 11, 2001; forty-five days prior to

8    that contact is November 27, 2000.  Plaintiff alleges discrete actions of discrimination in September

9    and October 1999, on April 9, 2000 and June 30, 2000.   (Ct. Rec. 8-2, p. 48 - 53).  Any claims

10    based on these actions are time-barred for failure to comply with the EEOC regulations. Cherosky,

11    330 F.3d at 1245.

12        Plaintiff argues that he should be excused from the 45 day rule because defendants have not

13    provided proof that he was aware of the 45 day rule.  However, the burden of proof lies not with the

14    defendant, but with the plaintiff to show that he was not notified of the time limits.  29 C.F.R. §

15    1614.105(a)(2).  Plaintiff has not presented evidence to meet that burden, and his failure to comply

16    with the 45 day rule is not excused.

17        Regarding plaintiff's claim of hostile work environment, the analysis of EEOC time

18    requirements is somewhat different. A hostile work environment generally involves a series of

19    incidents that form one unlawful employment practice.  In Morgan, the Supreme Court held that

20    "each discrete discriminatory act starts a new clock for filing charges that relate to that particular

21    claim." Morgan, 536 U.S. at 113, 122.  An employee may not receive relief for the time-barred

22    claims by characterizing them as one of many actions that created a hostile work environment.  Id.

23    The time-barred claims may be presented as evidence of a hostile work environment; however, in

24    order for a hostile work environment charge to be timely, the employee must consult the EEOC

25    counselor within 45 days of at least one act "that is a part of the hostile work environment."  Timely

26    acts that have "no relation" to the previous hostile conduct cannot be relied on by an employee to

27    "pull forward" time-barred claims.  Id.

28        Here, plaintiff alleges a hostile work environment based on age and gender.  (Ct. Rec. 10, p.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                              -9-

9-10).  At least one of the discrete discriminatory actions complained of by plaintiff must have

taken place after November 27, 2000, and it must be related to the hostile conduct alleged.   The

time-barred sex and age discriminatory actions and comments attributed to Mr. Staley are unrelated

to the timely adverse actions alleged, i.e. those occurring after November 27, 2000 (non-extension

of plaintiff's temporary appointment after January 2001, referral to Express for employment, and

discharge from JCC on March 23, 2001).[4]   Therefore the time-barred actions cannot be "pulled

forward" and considered as "background evidence."  Id.   Even if all time-barred acts are

considered, as discussed below, plaintiff  fails to meet his shifting burden of production under the

applicable discrimination laws.  Consequently, the court finds it unnecessary to dismiss those

claims pursuant to Rule 12(b)(6), as all claims will be analyzed and disposed of under the summary

judgment standard of Rule 56.

**C.     ADEA**

Plaintiff contends that the planned expiration of his position on June 30, 2000, the

termination of his position on January 30, 2001, and his discharge from JCC duties on March 23,

2001, were the result of unlawful age discrimination.  The Age Discrimination in Employment Act

(ADEA), 29 U.S.C. § 621 et seq., makes it unlawful for a federal employer "to fail or refuse to hire

or to discharge any individual [who is at least 40 years of age] . . . because of such individual's

age."  29 U.S.C. §§ 623 (a), 633 (a).  A prima facie showing of wrongful discharge under ADEA

requires a plaintiff to demonstrate: that he was within the protected age group; that he was

performing his job satisfactorily; that he was discharged; and that he was replaced by substantially

younger employees with equal or inferior qualifications.   Coleman v. Quaker Oats Co., 232 F. 3d

1271, 1281 (9th Cir. 2000).  A reduction in staff is a legitimate reason for discharge.  Id. at 1282.

The establishment of a prima facie case with minimal evidence and by simply denying the

credibility of the employers' witnesses is not sufficient to preclude summary judgment.  Id. at 1282

(citing Wallis, 26 F.3d at 889).

---

[4]  In Morgan, the Court held that discrete acts such as "termination are easy to identify.
Each incident of discrimination . . . constitutes a separate actionable 'unlawful employment
practice.'"  Morgan, 536 U.S. at 207.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                                    -10-

1    Defendant asks that summary judgment be granted as to the ADEA claims because plaintiff

2    has not designated facts showing a genuine issue for trial.  In order to survive defendant's motion

3    for summary judgment, plaintiff must establish a prima facie case or identify disputed material facts

4    in defendants' evidence.  Defendants correctly assert plaintiff cannot establish a prima facie case

5    regarding the June 30, 2000, or January 30, 2001, actions because plaintiff was not replaced with

6    another individual, but continued at all times as an instructor at JCC.  Regarding plaintiff's claim

7    based on the March 23, 2001 dismissal, defendants maintain plaintiff was not a USDA employee,

8    and therefore, a claim based on that action should be dismissed.  See Lutcher v. Musicians Union,

9    633 F.2d 880 (9th Cir. 1980).

10    Plaintiff argues that after that January 30, 2001, although he was hired by Express, Express

11    was acting as a joint employer with the USDA.  He bases his joint employer theory on the fact that

12    John Davis recommended plaintiff seek employment with Express and that, once hired by Express,

13    plaintiff returned to the same position as a vocational instructor.  Other reasons advanced by the

14    plaintiff are that the job was controlled by USDA and that plaintiff was "terminated by USDA

15    personnel, without the presence of an Express representative."  (Ct. Rec. 10, p. 5).

16    The Ninth Circuit has considered three tests to determine if an employee is a federal

17    employee for purposes of discrimination actions: the "common law agency" test; the multi-factor

18    "common law hybrid" test, which combines common law agency principles with an "economic

19    realities" test (adopted by the D.C. Circuit in Spirides v. Reinhardt, 613 F. 2d 826 (D.C. Cir. 1979);

20    and the "economic realities " test.  Sibbald v. Johnson, 294 F. Supp.2d 1173, 1176 (S.D. California

21    2003) (citing Lopez v. Johnson, 333 F.3d 959, 963 (9th Cir. 2003)).  However, the circuit has yet to

22    determine which applies to facts as presented in this case. [5]

23

24    _____

      [5] In Lopez, the Ninth Circuit found the multi-factor "common law hybrid" test was "ill-

25    suited for determining whether an individual, who is indisputably an employee of an independent
      contracting entity that provides employees to perform services for the government, is also an

26    employee of the government."  Id. at 963.  Lopez was a computer technician trained by a private
      technology contractor and assigned to the Navy for computer services. In deciding that Lopez was

27    not a federal employee, the court focused on the control exercised by the government over his

28    hiring and training, and found the government was minimally involved in the employee's training

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                    -11-

1    Relevant factors considered by the circuits examining this issue are: whether the work

2    usually is done under the direction of a supervisor or by a specialist without supervision; the skill

3    required in the particular occupation; who furnishes the equipment and the facility; the method of

4    payment (by time or by job); the manner in which the work relationship is terminated; whether

5    annual leave is afforded; whether the work is an integral part of the business of the "employer;"

6    benefits received; who pays the social security taxes; and the intention of the parties. Sibbald, 294

7    F. Supp.2d at 1176 (citing Spirides, 613 F.2d at 832); see also Lutcher, 633 F. 2d at 883

8    (employer's right to control the means and manner of the worker's performance is a primary factor).

9    No one factor is dispositive. [6] Id.

10    Here, although plaintiff clearly wanted to remain a federal employee, the record indicates

11    that it was the intent of the parties that plaintiff no longer be employed by the USDA due to the

12    above-cited government regulations prohibiting the extension of a temporary position.  Plaintiff

13    acknowledges that he was terminated because "his appointment had expired," and he then "applied

14    and was hired" by Express.  (Ct. Rec. 8-2, p. 47-48).  The nature of Express's business as an

15    employment agency contemplates that its employees will serve its clients until the client no longer

16    needs the personnel.  The authority to hire and fire plaintiff as an Express employee was at all times

17    with Express, and the record indicates that plaintiff continued to report to Express after his release

18

19    or assignment.  However, the Court declined to decide which test to apply because under either the

20    "economic realities" test or "common law agency" test, Lopez was not a federal employee. Id.

21    [6] In Walters v. Metropolitan Ed. Ent. Inc., 519 U.S. 202, 117 S.Ct. 660 (1997), for example,
the Supreme Court held that for purposes of determining the statutory definition of "employer" in a

22    Title VII case (i.e., 15 or more employees), the employee's appearance on the employer's payroll is

23    the "touchstone" of an employment relationship (the "payroll test").  But see Reid v. Summers, 232
F. 3d 933 (D.C. Cir. 2000) (The court used the "common law hybrid" test, and found plaintiff, an

24    employee of a private contractor who provided tour guides for the Treasury Building, was not a

25    federal employee.  There, the federal government was not involved in plaintiff's training and the
government had no control over firing her, even though it could reject any guide.  These facts

26    outweighed the fact that plaintiff used government supplies and worked on the government

27    premises.  The court noted that "factors relating to wages and benefits were especially ill-suited to a
joint employment theory because the plaintiff indisputably was [the private contractor's]

28    employee.").  Id. at 938-39.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                    -12-

1    from USDA duties.  (Ct. Rec. 8-2, p. 55). Plaintiff was a highly trained specialist who needed little,

2    if any, supervision as a vocational instructor, although the nature of the job required the USDA to

3    provide equipment, the classroom and administrative support.  It is undisputed that plaintiff was

4    terminated from federal employment by the USDA on January 30, 2001.  (Ct. Rec. 8-3, p. 61).

5    After that time, he did not receive pay, leave or benefits from the USDA.  However, it is

6    unnecessary to decide whether he is or is not a federal employee for purposes of this action, because

7    the plaintiff has not presented evidence to defeat defendants' motion for summary judgment.

8        Assuming plaintiff has presented a prima facie case, he must show that age actually was

9    considered and had a determinative influence on the March 23, 2001 dismissal. See Pottenger v.

10   Potlatch Corp., 329 F.3d 740, 745 (9th Cir. 2003) (quoting Reeves v. Sanderson Plumbing Prods.,

11   Inc., 530 U.S. 133, 141 (2000), and Hazen Paper Co. v. Biggins, 507 604, 610 (1993)).  If plaintiff

12   makes a de minimus showing of a prima facie case, the burden shifts to the defendant to articulate a

13   legitimate, non-discriminatory reason for its employment decision.[7]  If the defendant does that, the

14   plaintiff must then demonstrate that the alleged reason for the adverse employment decision is a

15   pretext for another motive which is discriminatory.  The ultimate burden of proof remains always

16   on the former employee to show intentional discrimination because of age.  Coleman, 232 F. 3d at

17   1281.

18        Here, defendants assert plaintiff has not made the requisite prima facie showing.  Plaintiff

19   contends that one week after March 23, 2001, his "replacement" was at JCC, and "he looked to be

20   younger than me, perhaps around fifty years old or older."  This is the extent of his proof that he

21   was replaced by a younger individual, and it does not satisfy the de minimus prima facie showing.

22

23

24        [7]  The shifting burden formula in McDonnell applies under the ADEA where the employee
     relies on circumstantial, rather than direct evidence of discrimination.  Direct evidence has been
25   defined as "evidence of conduct or statements by persons involved in the decision-making process
     that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit
26   the *fact finder* to infer that that attitude was more likely than not a motivating factor in the
     employer's decision."  Enlow v. Salem-Keizer Yellow Cab Co., Inc., 389 F.3d 802, 812 (9th Cir.
27   2004) (quoting Walton v. McDonnell Douglas Corp., 167 F.3d 423, 426 (8th Cir. 1999) (alteration in
     original, emphasis added in quote)).
28

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                              -13-

1    <u>Coleman</u>, 232 F. 3d at 1281.  Defendants do not dispute that Mr. Moore was used as a substitute,

2    but plaintiff does not designate documented facts that show Moore was similarly situated to

3    plaintiff and/or substantially younger.  Even if plaintiff made the required prima facie showing, the

4    reasons given by defendants for discontinuing plaintiff's services (decreasing student population

5    and plaintiff's accusatory remarks to deceased employee's daughter) are undisputed and non-

6    discriminatory.  (<u>See e.g.</u> Ct. Rec. 8, p. 15 (Plaintiff's rebuttal statement to Mr. Davis in the ROI,

7    states in part, . . . "Ms. Ball's sworn statement makes clear that [plaintiff's] claimed comments to

8    Mr. Mender's daughter were the primary, if not the only, reason Mr. Davis fired [plaintiff].")).

9         In rebutting the defendants' reasons as pretextual, Plaintiff must present more than

10   allegations, contentions and conclusory statements.  He must produce specific, substantive evidence

11   of pretext.  <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 918 (9th Cir. 1996).  Plaintiff has not

12   met his burden of production under the ADEA and has not presented any facts that raise an issue for

13   trial; therefore, summary judgment for defendants on the ADEA claims is appropriate.

14        **D.    Title VII**

15        Title VII provides that "all personnel actions affecting employees or applicants for

16   employment . . . in executive agencies . . . shall be made free from any discrimination based on

17   race, color, religion, sex or national origin."  42 U.S.C. 2000e-16, <u>et seq.</u>  A prima facie case of

18   Title VII "disparate treatment" gender discrimination, requires the plaintiff to establish: (1) he

19   belongs to a protected class; (2) he was performing according to his employer's legitimate

20   expectations; (3) he suffered adverse employment action; and (4) other employees with

21   qualifications similar to his own were treated more favorably.  <u>McDonnell</u>, 411 U.S. at 802. [8]  The

22   evidence must give rise to an inference of unlawful discrimination.  <u>Texas Dept. of Community</u>

23   <u>Affairs v. Burdine</u>, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981).   "The prima facie case may be based

24

25   ─────────────

26       [8] Plaintiff alleges intentional differential treatment by USDA because of his gender, thus
     asserting a claim of "disparate treatment."  To prevail on this claim, plaintiff must prove that USDA

27   acted with "conscious intent to discriminate."  <u>Costa v. Desert Palace, Inc.</u> 299 F.3d 838, 854 (9th
     Cir. 2000) (en banc), aff'd sub nom, <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 123 S.Ct. 2148

28   (2003) (citing <u>McDonnell</u>, 411 U.S. at 805-06).

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                       -14-

1  either on a presumption arising from the factors such as those set forth in [McDonnell], or by more

2  direct evidence of discriminatory intent."  Wallis, 26 F.3d at 889.  As with shifting burden of

3  production in ADEA actions, the degree of proof necessary to establish a prima facie case under

4  Title VII is minimal.  Id.

5      A plaintiff can provide indirect circumstantial evidence of age or sex discrimination that

6  raises an inference by showing that he was treated less favorably than a similarly situated female or

7  younger male.  To be similarly situated, all relevant aspects of plaintiff's employment must be

8  nearly identical to those of the comparative employee.  See e.g. Payne v. Illinois Central Railroad,

9  665 F.Supp. 1308, 1333 (W.D. Tenn. 1987).  Once a prima facie case is established, the burden

10  shifts to the defendant to articulate non-discriminatory reasons for the allegedly discriminatory

11  adverse action.  Id.  If the employer meets this burden, plaintiff then must show that the employer's

12  reason was a pretext for discrimination.  The plaintiff retains the ultimate burden of proof of

13  persuading that he has been the victim of intentional discrimination.  Burdine, 450 U.S. at 256.

14      Here, the analysis is similar to that for the ADEA claims.  Rose, 902 F.2d at 1420. Plaintiff

15  provides no direct evidence that the USDA made any adverse employment actions based on his

16  gender.  Other than his allegations that his release from JCC on March 23, 2001, was motivated by

17  reprisal (Ct. Rec. 10, p. 3), plaintiff offers no substantial evidence that he was replaced by a

18  similarly situated female or a substantially younger male.  It is undisputed that James Moore was

19  substituting after plaintiff's discharge, but plaintiff must present evidence that Mr. Moore was

20  substantially younger than he and the duties performed were "nearly identical" to those of plaintiff.

21   See Rose, 902 F.2d at 1421. Plaintiff does not present such evidence.  Even if plaintiff had met his

22  burden of establishing a prima facie case, he has offered no specific proof of pretext.

23      Plaintiff also alleges hostile work environment under Title VII. (Ct. Rec. 10, p. 9).  As

24  discussed above, hostile work environment is a species of discriminatory harassment characterized

25  by a series of actions prohibited by Title VII.  See Brooks v. City of San Mateo, 229 F. 3d 917, 923

26  (9th Cir. 2000).  It involves conduct sufficiently severe or pervasive to alter the terms and conditions

27  of the victim's employment. Ellison v. Brady, 924 F.2d 872, 875-76 (9th Cir.1991).  In deciding

28  whether a hostile work environment claim exists, the court will look at all the circumstances,

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                    -15-

1   including: the frequency of the discriminatory conduct; its severity; whether it is physically

2   threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

3   with an employee's work performance." Harris v. Forklift Systems, 510 U.S. 17, 23, 114 S.Ct. 367

4   (1993). A "mere utterance" of an offensive comment does not alter employment conditions

5   sufficiently to support a Title VII claim. Id. at 21.

6        A hostile work environment must be objectively and subjectively abusive. When assessing

7   the objective portion of a claim, the perspective of a "reasonable victim" is assumed. The work

8   place atmosphere must be so abusive and discriminatory, that it unreasonably interferes with the

9   victim's job performance. Brooks, 229 F. 3d at 923 (quoting Fuller v. City of Oakland, Calif, 47

10  F.3d 1522, 1527 (9th Cir. 1995)).

11       For example, in Brooks, plaintiff was sexually assaulted by a co-worker, who was

12  subsequently fired and prosecuted. The court held that one incident, although egregious, did not

13  establish severe or pervasive harassment that made employment onerous, since the offending

14  employee was fired and no other incidents took place. Brooks, 229 F.3d at 927.

15       In comparison, the plaintiff in Ellison alleged that her male co-worker persistently pursued

16  her, sent her unwanted sexually explicit love letters at the office, ignored her requests to leave her

17  alone and, after her complaints to her supervisor, was removed from the office temporarily for his

18  behavior. He was then returned by her employer to work with her, but the employer did not clearly

19  tell him that continued harassment would result in his termination. The court held these facts

20  established a prima facie case of hostile work environment. Ellison, 924 F. 2d at 883. In Fuller,

21  plaintiff was a female police officer who had a romantic relationship with a fellow police officer

22  and then ended it. After that, they continued to work together. He called her repeatedly, threatened

23  to kill himself, and after she had her phone number changed, he retrieved it from employer records

24  and continued to call her. He ran her and her boyfriend off the road in a police car, and left

25  unsolicited messages on her phone. The court held these actions were severe and pervasive enough

26  to constitute a hostile work environment. Fuller, 47 F.3d at 1528.

27        In Harris, the employee's supervisor told her on several occasions, in the presence of other

28  employees, "You're a woman, what do you know" and "We need a man as the rental manager;" at

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                    -16-

1    least once, he told her she was "a dumb ass woman."  He often insulted her because of her gender

2    and made sexual innuendos.  In front of others, he suggested that the two of them go to a motel to

3    "negotiate her raise." He would ask her and other female employees to get coins from his front

4    pants pocket.  He threw objects on the ground in front of Harris and other women, and asked them

5    to pick the objects up.  <u>Harris</u>, 510 U.S. at 19.  The Supreme Court found these conditions to be

6    sufficiently severe and pervasive to establish a hostile work environment and remanded the case for

7    further proceedings.  <u>Id.</u> at 23.

8          As discussed above, many of the discrete discriminatory actions complained of by plaintiff

9    in the captioned case are time-barred by EEOC regulations.  However, assuming those actions may

10   be "pulled forward" as background evidence under the <u>Morgan</u> analysis, and viewing the evidence

11   in the most favorable light to plaintiff, there are no actions, or series of actions that rise to the level

12   of frequency or severity that would support a Title VII hostile work environment claim.  Plaintiff

13   asserts that the proposed shortening of his temporary appointment to June 30, 2000, was "a

14   continuation of the harassment based on my age and sex," but admits that the position was extended

15   to January 30, 2001, and the proposal caused him no economic harm.  (Ct. Rec. 8-2, p. 54).  Other

16   than the two remarks attributable to Mr. Staley in September 1999 and April 2000,  plaintiff did not

17   cite disparaging remarks by anyone else during his work at USDA.  (Ct. Rec. 8-2, p. 49).

18         The court finds that Mr. Staley's remarks were not so abusive or offensive to cause a

19   "reasonable" person to be threatened or humiliated.  They were the kind of remarks that could even

20   be made in passing, with humor, in a sociable setting, evincing a sense of envy, rather than

21   discrimination.  Plaintiff alleges no change in his work conditions, except Mr. Staley's disapproval

22   of his behavioral write-ups, which were never prohibited by the supervisor, Mr. Cody.  Plaintiff

23   states that after he complained to Mr. Cody of Mr. Staley's interference with his teaching duties,

24   there were no more incidents.  Plaintiff's speculation that Mr. Staley "gave his students the

25   message" that he was not welcome at the JCC does not rise to the level of an "offensive utterance."

26

27         Looking at the totality of the circumstances, the fact that plaintiff was not provided with a

28   substitute or assistant for his class load, while arguably making plaintiff's job more difficult, does

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                              -17-

1   not constitute gender or age discrimination.  The uncontroverted evidence establishes that the JCC

2   instructors were expected to cover for each other, and the extra teaching responsibilities did not

3   render plaintiff's working conditions abusive, threatening or humiliating.  (Ct. Rec. 8-3, p. 3, 16-

4   17).  The evidence shows neither the frequency nor severity of actions that support a hostile work

5   environment claim.  As plaintiff has failed to meet his burden of production, summary judgment is

6   appropriate on the Title VII discrimination and hostile work environment claims.

7   **E.    Retaliation**

8          Plaintiff contends that his discharge from JCC on March 23, 2001, was in retaliation for his

9   EEO activities.  (Ct. Rec. 10, p. 4).  To make out a prima facie case of retaliation under Title VII,

10  plaintiff must establish that he acted to protect his Title VII rights, an adverse employment action

11  was then taken against him, and there was a causal link between the two events.  Steiner v.

12  Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir. 1994) (citations omitted).  The burden then

13  shifts to defendants to articulate legitimate, non-retaliatory reasons for the adverse action.  Plaintiff

14  has the ultimate burden of showing that the proffered reasons are pretextual.  Id. at 1465.

15         Plaintiff argues that his change of employee status on January 30, 2001, and discharge from

16  JCC duties on March 23, 2001, were adverse employment actions that resulted from his (1) initial

17  complaint to the veterans counselor about not being hired,  and (2) his January 11, 2001 EEO

18  action.  (Ct. Rec. 10, p. 4, 10).  Plaintiff's activities regarding the veterans preference are not

19  protected rights under Title VII, thus he cannot establish a prima facie case of retaliation based on

20  those activities.  See Learned v. City of Bellevue, 860 F.2d 928, 932 (9th Cir. 1988) (opposed

21  discrimination must be prohibited by Title VII).  Further, plaintiff was hired by defendants once the

22  mistake was brought to their attention and his veterans service was properly credited.  As for the

23  January 30, 2001, action, the evidence shows that government regulations prohibited extension of

24  plaintiff's temporary position past that date.  Plaintiff attempts to establish a causal connection

25  between his EEO complaint and the expiration of his temporary appointment by alleging that

26  USDA knew about his activities.  (Ct. Rec. 10, p 10).  Even if the JCC employees did know,

27  plaintiff offers no facts to establish a causal link between their knowledge and the expiration of the

28  temporary position.  Plaintiff has not come forth with any evidence to show that the non-retaliatory

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                      -18-

1    reason  given (government regulations) is pretextual.  This would be difficult to establish in light of

2    the undisputed fact that defendants continued to use plaintiff as an instructor after the temporary

3    position expired and he was hired by Express.

4          Assuming plaintiff was a federal employee on March 23, 2001, as discussed above, the

5    reasons given by defendants for no longer using plaintiff as a JCC instructor are not discriminatory.

6    Other than speculation and conclusions, plaintiff has not designated any facts to either establish a

7    causal link between the January 11, 2001 EEO activity and his release on March 23, 2001, or show

8    that defendants' reasons are pretextual.  Therefore, he has not met his burden and summary

9    judgment is appropriate on the retaliation claim.

10   **IV.    CONCLUSION**

11         The material facts before the court are undisputed: plaintiff was hired by defendants on

12   September 9, 1999, after plaintiff complained that his veterans experience was not properly

13   credited; he worked as a vocational instructor; his temporary position was scheduled to expire on

14   June 30, 2000; he asked for and received an extension to January 30, 2001; on January 11, 2001, he

15   met with an EEO counselor regarding age and sex discrimination; per government regulations, his

16   temporary position expired on January 30, 2001, after which he applied for a position with Express;

17   he was hired and performed the same duties as temporary instructor as an Express employee; he

18   was paid by Express after January 30, 2001; he was told his services were no longer needed on

19   March 23, 2001.

20         Plaintiff has not filed a statement of facts designating specific facts that assert a genuine

21   issue of material fact that would preclude summary judgment.  The facts of record are considered

22   uncontroverted except to the extent that they are controverted by the record.  Viewing all of the

23   facts in the record in the light most favorable to plaintiff, he has not met his ultimate burden of

24   production in the shifting burden scheme of ADEA and Title VII, and, therefore, makes no showing

25   of a genuine issue for trial.  Accordingly,

26

27   **IT IS ORDERED**:

28         1.    Defendants' Motion for Summary Judgment (**Ct. Rec. 6** ) is **GRANTED**.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                          -19-

1    2.    The parties shall bear their own costs.

2    3.    The District Court Executive is directed to file this Order and provide a copy to

3          counsel for plaintiff and defendants.  Judgment shall be entered for defendants and

4          the file shall be **CLOSED.**

5

6          **DATED** this   2nd         of June 2005.

7

8                                         s/ Alan A. McDonald
                                          ALAN A. McDONALD
9                                         Senior United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
*INTER ALIA*                             -20-